# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF IOWA,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF WATERLOO, IOWA,<br><br>Defendant. | No. 15-CV-2087-LRR<br><br>ORDER |

## TABLE OF CONTENTS

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. RELEVANT FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . 3

    A. *The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B. *The Clean Water Act* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C. *Iowa Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    D. *The Treatment Plant and Sewer System* . . . . . . . . . . . . . . . . . . . . 3
    E. *The Consent Decree* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV. ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A. *Standard of Review for Consent Decrees* . . . . . . . . . . . . . . . . . . . 7
    B. *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        1. *Fairness, reasonableness and adequacy* . . . . . . . . . . . . . . . . 9
        2. *Consistency with the goals of the CWA and Iowa law* . . . . . . 12
        3. *The public comment* . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        4. *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## I. INTRODUCTION

The matter before the court is Plaintiffs the United States of America and the State of Iowa's unresisted "Motion to Enter Proposed Consent Decree" ("Motion") (docket no. 12).

## II. PROCEDURAL HISTORY

On October 26, 2015, Plaintiffs filed a Complaint (docket no. 2) seeking injunctive relief and civil penalties against Defendant for violations of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b), and Iowa law, including the discharge of untreated wastewater containing raw sewage into the Cedar River and its tributaries, the discharge of pollutants in excess of the level allowed in Defendant's National Pollutant Discharge Elimination System ("NPDES") Permit and failure to comply with the operations and maintenance conditions contained in the NPDES Permit. *See* Complaint at 1, 2. On the same date, Plaintiffs also filed a Notice of Consent Decree (docket no. 3) and lodged the Consent Decree (docket no. 3-1) itself. On December 22, 2015, Plaintiffs filed the Motion.

Pursuant to 28 C.F.R. § 50.7, Plaintiffs published notice of the proposed Consent Decree in the Federal Register for a period of thirty days for public comment. *See* 80 Fed. Reg. 67,793 (Nov. 3, 2015). Plaintiffs received only one public comment during the comment period, which has now expired, and they have filed the comment in accordance with 28 C.F.R. § 50.7(b). *See* Memorandum in Support of the Motion (docket no. 12-1) at 18. Paragraph 106 of the Consent Decree provides that the court may approve the Consent Decree at this time without further notice to Defendant. *See* Consent Decree at 43-44. However, Plaintiffs have also contacted Defendant with regard to the Motion, and Defendant does not resist. Motion at 1. There have been no intervenors in the instant action challenging the Consent Decree. The Motion is fully submitted and ready for decision.

## III. RELEVANT FACTUAL BACKGROUND

### A. The Parties

Plaintiffs are the United States of America, acting on behalf of the Environmental Protection Agency ("EPA"), and the State of Iowa, pursuant to 33 U.S.C. § 1319(e). Defendant City of Waterloo is a city organized and existing under the laws of the State of Iowa.

### B. The Clean Water Act

The CWA is designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve this goal, the CWA makes the unauthorized discharge of pollutants unlawful. 33 U.S.C. § 1311(a). The CWA authorizes the EPA to allow a state to implement the NPDES program within its jurisdiction. The State of Iowa, through the Iowa Department of Natural Resources ("IDNR"), is allowed to administer the NPDES program within the state. Defendant's NPDES Permit was duly issued by the IDNR and is currently valid. The NPDES Permit contains, among other things, limitations on the amounts of certain pollutants and chemicals that may be lawfully discharged into the water sources surrounding Waterloo.

### C. Iowa Law

The Iowa Code prohibits the discharge of pollutants, except in accordance with a permit issued by the IDNR. *See* Iowa Code § 455B.186(1); Iowa Admin. Code r. 567-61.1(1). The Iowa Code also makes it unlawful to operate any wastewater disposal system without, or contrary to a condition of, a permit issued by the IDNR. *See* Iowa Code § 455B.186(1); Iowa Admin. Code r. 567-64.3(1).

### D. The Treatment Plant and Sewer System

At all relevant times, Defendant has owned and operated a sewage treatment plant ("Plant") located in Waterloo, Iowa. The Plant serves approximately 70,000 persons and approximately 20 industrial users. The Plant treats water through a variety of processes

including screening, grit removal, and clarification. This treated wastewater is then discharged into the Cedar River. When wastewater flow into the Plant exceeds the Plant's capacity, the wastewater is diverted into two equalization basins. From there it is either rerouted back into the Plant or discharged directly into the Cedar River, untreated.

At all relevant times, Defendant has also owned and operated a sanitary sewer collection system ("Sewer System"). The Sewer System receives domestic sewage and industrial commercial wastewater for the Waterloo area and feeds the waste into the Plant. Due to various defects in the Sewer System, groundwater and rainwater enter the Sewer System as well, creating capacity issues. When this occurs, Defendant employs portable pumps that discharge the excess, untreated, wastewater directly into the waterways surrounding Waterloo. However, the NPDES Permit authorizes Defendant to discharge pollutants only from specified point sources, or "outfalls" into specified waters, namely the Cedar River.

Plaintiffs allege that on over 300 occasions, spanning from 2008 to August 31, 2015, Defendant discharged in excess of 911 million gallons of untreated wastewater, including raw sewage, into the Cedar River and Black Hawk Creek through various unauthorized point sources. On at least 500 occasions, spanning from 2008 to August 31, 2015, Plaintiffs allege that the Sewer System has released wastewater containing raw sewage onto public and private properties, including homes and buildings located in the City of Waterloo, endangering the public by putting it in contact with the raw sewage. At various times during the relevant period, Plaintiffs allege Defendant has discharged effluent from the authorized outfalls in excess of the levels specified in the NPDES Permit. Plaintiffs further allege that Defendant has violated the NPDES Permit by failing "to properly operate and maintain its sewer system by, for example, not adequately cleaning or repairing the sewer system or providing adequate capacity to accommodate a growing service population." Complaint at 12. Finally, Plaintiffs allege that Defendant has

violated the "bypass" prohibition contained in the NPDES Permit. "Bypass means the intentional diversion of waste streams from any portion of a treatment facility." 40 C.F.R. § 122.41(m)(1)(i). Plaintiffs allege that the other violations outlined herein can be attributed, in whole or in part, to Defendant's failure to comply with the bypass prohibition.

## E. The Consent Decree

The court has carefully reviewed the Consent Decree. Although a detailed reproduction of its terms is unnecessary, the court will provide a brief overview of the Consent Decree's main provisions. The Consent Decree requires Defendant to undertake several immediate remedial measures including posting warning signs at all sewage overflow sites, such signs to remain posted until the overflow problem can be rectified, as well as continuing the removal of basement footing drains, which direct water into the Sewer System and create capacity issues. Defendant is also required to implement and update Plant maintenance/operation and Sewer System overflow response plans. Defendant will perform a sewer system condition assessment to determine where inflows creating capacity problems are occurring, which will assist Defendant in remedying those issues. It will also create a computerized hydraulic model to assess the Sewer System's response to wet weather events and assist in pinpointing specific remedial measures to address overflow and capacity problems. Defendant will assess the existing and future capacity of the Sewer System under a range of flows and rainfall events. Defendant will compile all of these assessments into a "Master Plan" and include specific remedial measures to address structural issues with the Sewer System as well as to ensure the Sewer System's capacity is adequate for current and projected future needs. Such remedial measures are to be completed by December 31, 2032. Defendant will determine the priority of remedial measures by assessing the potential for human health and

environmental impact risks, the frequency of Sewer System overflows and prohibited bypasses, as well as technical engineering judgment.

The EPA shall approve the Master Plan and Defendant is then free to implement the remedial measures. The Master Plan may be modified, first, by Defendant's written application to the United States, and, if the United States refuses the modification, by motion to the court pursuant to Federal Rule of Civil Procedure 60(b). After the Master Plan has been fully implemented (or earlier, upon application of Defendant to the EPA), Defendant shall demonstrate for a period of one year that all Sewer System overflows and prohibited bypasses due to capacity problems or operations/maintenance deficiencies have been eliminated. Defendant is also required to pay a total civil penalty of $272,000. This penalty is payable to both the United States and the State of Iowa, with each to receive $136,000. The penalty payable to the State of Iowa may be satisfied by completing an approved environmentally beneficial project or projects with costs equaling or exceeding $136,000.

Defendant is required to submit annual status reports to the EPA and the IDNR containing a summary of Defendant's progress and the current status of all projects, plans and programs pursuant to the remedial measures outlined above. The parties have also stipulated penalties to be assessed to Defendant in the event Defendant fails to comply with certain provisions of the decree. The Consent Decree also provides for informal and formal dispute resolution ending in judicial review for issues arising under or with respect to the Consent Decree. The Consent Decree provides that the court shall retain jurisdiction over the instant action until the termination of the Consent Decree for purposes of resolving disputes arising under it.

## IV. ANALYSIS

### A. *Standard of Review for Consent Decrees*

The court has considerable discretion in deciding whether to approve the Consent Decree. *Cf. United States v. BP Amoco Oil PLC*, 277 F.3d 1012, 1019 (8th Cir. 2002) (reviewing a district court's grant of a motion to enter a consent decree for an abuse of discretion). "Consent decrees should[] spring from—and serve to resolve—a dispute within the court's subject-matter jurisdiction; come within the general scope of the case from the pleadings; and, further the objectives of the law on which the complaint was based." *EEOC v. Prod. Fabricators, Inc.*, 666 F.3d 1170, 1172 (8th Cir. 2012). "The adopting court is free to reject agreed-upon terms not in furtherance of statutory objectives." *Id.* "When reviewing a proposed consent decree, the trial court is to review the settlement for fairness, reasonableness, and adequacy." *Id.* (quoting *United States v. Metro. St. Louis Sewer Dist.*, 952 F.2d 1040, 1044 (8th Cir. 1992)); *see also United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994) (listing three factors the court should consider for consent decrees arising under the CWA: whether the decree is adequate to accomplish the goal of cleaning the environment, whether it compensates the public for the costs of remedial measures and whether it reflects the relative strength of the government's case). "A consent decree is a judicial act. Thus, before entering such a decree, the [c]ourt must ensure that it does not 'put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence.'" *Missouri v. Westinghouse Elec., LLC*, 487 F. Supp. 2d 1076, 1088 (E.D. Mo. 2007) (quoting *United States v. City of Miami, Fla.*, 664 F.2d 435, 441 (5th Cir. 1981)).

Accordingly, a court may not merely "rubber stamp" a consent decree, but must instead "carefully consider[] the underlying facts and legal arguments . . . ." *BP Amoco Oil*, 277 F.3d at 1019. The law strongly favors settlements; however, courts must not abdicate their duty to adjudicate controversies before them in accordance with the law

merely because the parties have proposed a consent decree. *See Angela R. by Hesselbein v. Clinton*, 999 F.2d 320, 324 (8th Cir. 1993) ("[F]ederal courts in adopting consent decrees are not mere "recorders of contracts' from whom parties can purchase injunctions.'" (quoting *Local No. 93, Int'l Ass'n of Firefighters, ALF-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986))). Nevertheless, where the United States is a party to the consent decree, the court will give due deference to the Environmental Protection Agency's ("EPA") inherent expertise in environmental matters in determining whether to approve the consent decree. *See N.E. Iowa Citizens for Clean Water v. AgriProcessors, Inc.*, 469 F. Supp. 2d 666, 672 (N.D. Iowa 2006) ("Settling an enforcement action is a discretionary act on the part of the EPA, and the EPA has considerable expertise in determining the appropriate settlement." (citation omitted)). "Th[e] policy [in favor of settlements] has particular force where, as here, a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990).

### B. Application

In the Motion, Plaintiffs now request that the court "approve the Consent Decree as fair, reasonable, and consistent with the goals of the CWA." Memorandum in Support of the Motion at 1. Plaintiffs argue that the Consent Decree is fair, reasonable and adequate, that the Consent Decree furthers the goals of the CWA and Iowa Code provisions at issue and that the comment received during the public comment period does not provide adequate reason to deny the Motion. *See id.* at 10-14. The court shall first consider these arguments separately. It will then determine whether the proposed Consent Decree should be approved.

### 1. Fairness, reasonableness and adequacy

Courts considering whether a consent decree is fair consider both procedural fairness and substantive fairness. *See AgriProcessors*, 469 F. Supp. 2d at 673; *see also Cannons Eng'g Corp.*, 899 F.2d at 86 (noting that "fairness in the . . . settlement context has both procedural and substantive components"). Procedural fairness turns on whether the parties "were . . . negotiating in good faith and at arm's length." *BP Amoco Oil*, 277 F.3d at 1020; *see also Cannons Eng'g Corp.*, 899 F.2d at 84 (noting that courts should give particular deference to agreements that have been reached after "parties, themselves knowledgeable and represented by experienced lawyers, have hammered out an agreement at arm's length and advocate its embodiment in a judicial decree"). Courts examining this factor "should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Cannons Eng'g Corp.*, 899 F.2d at 86. Processes filled with "adversarial vigor" provide further assurances that the proposed settlement is fair to all parties involved. *Id.* at 87 n.4; *see, e.g., Telluride Co.*, 849 F. Supp. at 1403-05 (finding that the negotiations surrounding the consent decree were not in good faith or at arm's length where the EPA attempted to settle the matter in sixty days, filed the decree at the same time as the complaint, relied primarily on the defendant's own consultant to formulate potential remedial measures and received multiple letters during the public comment period opposing the decree).

Here, the court finds that the procedures surrounding the drafting of the Consent Decree were adequate and fair. Plaintiffs state that the parties have been discussing the terms of the settlement for more than two years, and that Defendant has been represented by local counsel, outside counsel experienced in environmental law and technical experts at relevant times during negotiations. Memorandum in Support of the Motion at 10. The parties settled on an agreement in principle, drafted separate proposed decrees and ultimately came to agree on the Consent Decree as filed in this case. *Id.* Notably, no third

party has come forward to challenge the adequacy of the settlement process, nor has one party relied completely on the other to formulate remedial measures or the terms of the decree. While the court recognizes that the Consent Decree was filed on the same date as the Complaint, as in *Telluride Co.*, the other circumstances surrounding the negotiation of the Consent Decree in the instant action are so dissimilar to those in *Telluride Co.* that the court declines to rely on it. Instead, the court finds that the Consent Decree is procedurally fair.

Substantive fairness, as opposed to procedural fairness, focuses on "concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible."[1] *Cannons Eng'g Corp.*, 899 F.2d at 87. In doing so, the court does not examine "whether the settlement is one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute." *Id.* at 84. "The court need only be satisfied that the decree represents a 'reasonable factual and legal determination.'" *United States v. State of Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (quoting *United States v. City of Miami, Fla.*, 664 F.2d at 441). The court finds that the Consent Decree is substantively fair. Defendant exercised control over the Plant and Sewer System during the period when

---

[1] This factor appears most salient when a consent decree attempts to apportion liability between several potentially responsible parties for an environmental violation, particularly under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9622(d)(1)(A). *See, e.g.*, In re *Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003) (discussing substantive fairness as a measure of comparative fault); *Cannons Eng'g Corp.*, 899 F.2d at 87 ("[S]ettlement terms must be based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each [potentially responsible party] has done."). Because Defendant is just one party, the court declines to give the substantive fairness inquiry significant weight in its analysis.

the alleged violations of the CWA and Iowa law occurred. Thus, it is fair that Defendant should be asked to answer for and alleviate those alleged violations in the Consent Decree.

Reasonableness and adequacy entail a multifaceted inquiry. Courts have variously considered: whether the decree will be effective in cleaning the environment; whether it provides satisfactory public compensation for the costs of remediation; possible alternatives for remedying hazards; whether the terms of the decree, including enforcement mechanisms, are clear; and whether the decree reflects a resolution of the actual controversy in the complaint. *See S.E.C. v. Citigroup Global Mkts., Inc.*, 752 F.3d 285, 294-95 (2d Cir. 2014) (listing the factors considered in Securities and Exchange Commission consent decrees); *United States v. Davis*, 261 F.3d 1, 26 (1st Cir. 2001) (listing factors under CERCLA); *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991).

Plaintiffs argue that the Consent Decree is reasonable and adequate because "the [Consent] Decree requires the [Defendant] to plan and complete both short- and long-term assessments and remedial projects that will address the [Defendant's] primary underlying problems of uncontrolled sewage overflows and inadequate system maintenance . . . ." Memorandum in Support of the Motion at 11. The Consent Decree provides for modification of its timetables and reprioritization of projects. *Id.* It also requires Defendant to pay $272,000, representing the substantial civil penalties Defendant could have incurred had the instant action proceeded to trial. *Id.* Plaintiffs contend that the settlement penalty is reasonable "because it reflects the United States' careful and informed assessments of the merits of the claim; the costs, risks, and delays that litigation would entail; and the benefits that will accrue by immediately implementing the injunctive measures required by the proposed [Consent] Decree." *Id.* at 12. The court finds that the Consent Decree is adequate and reasonable. It requires Defendant to address the alleged violations by improving its infrastructure with an eye toward avoiding future violations.

The substantial public safety risk that continued violations pose, along with the dearth of alternative possibilities to remedy the alleged violations, suggest to the court that the Consent Decree is reasonable and adequate.

### 2. Consistency with the goals of the CWA and Iowa law

Plaintiffs note that "[t]he overarching goal of the CWA is 'to restore and maintain the chemical, physical, and biological integrity of the [n]ation's waters.'" *Id.* at 12 (quoting 33 U.S.C. § 1251(a)). Plaintiffs claim that the Consent Decree is consistent with those goals because, by its terms, it requires Defendant to cease the alleged conduct that violates the CWA and Iowa law. *Id.* Therefore, "[Defendant's] actions under the [Consent] Decree will prevent unauthorized overflows and illegal discharges of sewage-laden wastewater into the Cedar River and its tributaries, consistent with the goals of the CWA" and Iowa law. *Id.* Plaintiffs also contend that the settlement penalty in the Consent Decree "also furthers the CWA's goals by deterring non-compliance by other regulated businesses." *Id.* The court agrees. The Consent Decree requires Defendant to desist its violations of the CWA and Iowa law and eliminate the discharge of pollutants into the Cedar River and its tributaries. It provides concrete action items and creates systems to ensure timely compliance with this goal. Accordingly, the court finds that the Consent Decree is consistent with the goals of the CWA and Iowa law.

### 3. The public comment

The sole comment received during the public comment period was from Chuck Hansen of Hansen Investment Holdings, LLC, which appears to be based in Sacramento, California. Hansen makes general criticisms of both the Consent Decree and the United States, claiming that "[i]t is disappointing to see the wasted time, money, and prolonged damages to the environment that the [Department of Justice] and EPA is causing to unsuspecting cities and towns by tragically misguiding their efforts." *Id.* at 18. Hansen also questions the Consent Decree's requirement that Defendant conduct a sewer condition

assessment, claiming that the methods proposed to conduct such assessment are "archaic and ineffective." *Id.*; *see also* Consent Decree at 96-99 (outlining the requirements for the sewer condition assessment and stating that Defendant "may use [closed circuit television], sonar, 360-degree video, laser [imaging], or other methods normally utilized by other sewer management agencies" to conduct the assessment). Plaintiffs argue that Hansen's comment does not truly call into question the fairness, adequacy or reasonableness of the Consent Decree because he "does not provide any specific information regarding why the Consent Decree's suggested condition assessment methods are ineffective, nor does he suggest specific methods that are more effective." Memorandum in Support of the Motion at 13. Plaintiffs further argue that the comment itself is incorrect, stating that the Consent Decree provides a non-exhaustive list of inspection methods by way of example, but that the language used is flexible enough to utilize alternative inspection methods. *Id.*

Regulations require the government to publish the proposed consent decree in the Federal Register for a public comment period. *See* 28 C.F.R. § 50.7. Accordingly, courts must take under serious consideration any comments received during this period. *See, e.g., Akzo Coatings of Am., Inc.*, 949 F.2d at 1435 (noting that whether there was a "manifested willingness of [the] EPA to thoroughly consider all oral and written comments made with regard to the proposed decree" was an important inquiry in deciding whether to approve it); *Telluride Co.*, 849 F. Supp. at 1404-05 (considering the number of public comment letters received in opposition to the consent decree at issue, and noting that the court "cannot overemphasize the role that the public plays in th[e] process"). The court has considered Hansen's comment, but finds that it does not draw into question the fairness, reasonableness or adequacy of the Consent Decree. The comment provides very little by way of specific grievances with the Consent Decree, instead generally expounding upon Hansen's displeasure with the Department of Justice and EPA. The closest the comment comes to a particular concern with the Consent Decree is Hansen's complaint that

the methods the Consent Decree suggests for conducting the sewer condition assessment are ineffective and out of date. While the court agrees that truly outdated and ineffective methods should be rejected in favor of more effective and efficient ones, the court also agrees with Plaintiffs that the language of the Consent Decree provides the necessary flexibility to employ such methods where appropriate. Accordingly, the court declines to give significant weight to Hansen's comment.

### 4. *Summary*

The court finds that the Consent Decree is fair, reasonable and adequate. It also finds that the Consent Decree closely comports with the goals of the CWA and Iowa law. The court finds that the sole comment received during the public comment period does not draw the fairness, reasonableness or adequacy of the proposed Consent Decree into question.

## V. CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1) The Motion (docket no. 12) is **GRANTED**. The court shall separately sign and file the Consent Decree; and

(2) The Clerk of Court is **DIRECTED** to close this case.

The court shall retain jurisdiction over the instant action for the sole purpose of adjudicating disputes arising under the Consent Decree.

**IT IS SO ORDERED.**

**DATED** this 20th day of January, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA